Richard A. DAVIDSON, Plaintiff,

v.

James S. BRADY, Robert C. Greene, John Doe I and John Doe II, jointly and severally, Defendants.

No. G81–239.

United States District Court, W.D. Michigan, S.D.

March 16, 1983.

Chris Parfitt, of Jenkins, Nystrom & Sterlacci, P.C., Southfield, Mich., for plaintiff.

Robert L. Gordon, of Tax Division, U.S. Dept. of Justice, Washington, D.C., for defendants.

OPINION

ENSLEN, District Judge.

Plaintiff, Richard A. Davidson, brought this action seeking damages for the alleged improper disclosures of federal tax return information by the Defendants, pursuant to Section 7217 of the Internal Revenue Code of 1954, 26 U.S.C. § 7217. Section 7217 authorizes suits to be brought against "a person" who discloses tax "returns" or "return information" in a manner which violates Section 6103 of the Internal Revenue Code of 1954, 26 U.S.C. § 6103. The Defendants are two former United States Attorneys for this District and two unnamed employees of the Internal Revenue Service. This matter is now before the Court on the Defendants' Motion to Dismiss the Complaint, filed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

*I. Factual Background*

On March 20, 1978, a delegate of the Secretary of the Treasury made an assessment, pursuant to Section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672, and gave notice of the assessment and demand for payment against Richard Davidson. In response to that assessment, Davidson filed a Statement of Financial Condition and Other Information, form 433, dated June 30, 1978.

On January 8, 1979, Edward Solomon pled guilty to count one of a six count indictment which had charged him with evasion of estate tax, 26 U.S.C. § 7201; aiding and abetting the commission of an offense, 18 U.S.C. § 2(a); subscribing a false estate tax return, 26 U.S.C. § 7206(1); and conspiracy to defraud the United States by impeding, impairing, obstructing and defeating the lawful government functions of the Internal Revenue Service, 18 U.S.C. § 371. *United States v. Edward Solomon,* Criminal File G 78–125 CR (W.D.Mich.). The single count to which Solomon pled guilty involved a violation of 18 U.S.C. § 371, charging a conspiracy to defraud the United States by impeding the lawful government functions of the Internal Revenue Service.

Subsequent to Solomon's guilty plea, the United States Attorney's Office, pursuant to the normal sentencing procedure, prepared and submitted to the Court a memorandum, subscribed by Defendants Brady and Greene, in which recommendations regarding Solomon's sentence were set forth.[1] Among the topics included in that memorandum was a Statement of Financial Condition which Solomon had filed with the United States Probation Office shortly after his guilty plea.[2] Defendants Brady and Greene noted in their memorandum that there were serious questions raised as to the veracity and accuracy of that Financial Statement, and that the documents submitted to the Probation Department would indicate that Solomon was committing a fraud upon the Court.

In an effort to fully apprise the Court as to the extent of Solomon's misstatement in his Financial Statement, United States Attorneys Brady and Greene explored in detail several specific items which had been contained in Solomon's financial statement. For example, Solomon's financial statement indicated that he owed $500,000 to Davco, Inc., a corporation whose principal owner is the Plaintiff in this action. In order to establish the falsity of that statement, the prosecutors cited and attached to the Sentencing Memorandum the Financial Statement which Davidson had previously filed with Internal Revenue Service in the course of attempting to settle a civil tax matter.[3] In that financial statement, Davidson stated that Solomon owed him nothing, and that instead he owed Solomon $855,000, plus $307,800 in interest, for a total of $1,162,-800.[4]

The factual basis of the instant lawsuit arises out of the attachment of Davidson's Financial Statement as an exhibit to the Sentencing Memorandum filed by the United States in the criminal action against Solomon. More specifically, Davidson claims that the disclosure of this financial statement has resulted in his being named a party defendant in several civil lawsuits.[5]

## II. Statutory Framework

Plaintiff initiated this action pursuant to Section 7217 of the Internal Revenue Code, a relatively new provision which was added by Section 1202(e) of the Tax Reform Act of 1976, P.L. 94–455.

The private cause of action created by Section 7217 is set forth in Section 7217(a), which provides:

> *General Rule.*—Whenever any person knowingly, or by reason of negligence, discloses a return or return information (as defined in section 6103(b)) with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages against such person, and the district courts of the United States shall have jurisdiction of any action commenced under the provisions of this section.

In order to prevail in this matter, Plaintiff must establish a violation of Section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103. Section 6103(a) sets forth a "general rule" that "returns" and "return information" are confidential, and may not be disclosed by officers or employees of the United States, or certain other individuals

---

1. A copy of the Sentencing Memorandum is included in the Court file, along with three of the nineteen exhibits to that memorandum, Exhibits 14, 15 and 16.

2. See Rule 32(c), Federal Rules of Criminal Procedure.

3. This tax matter involved a so-called "100% penalty" which had been assessed against Plaintiff for willful failure to collect and pay over employment taxes to the United States. *See,* 26 U.S.C. § 6672.

4. Additionally, the United States Attorneys also cited records of the Michigan Department of Highways, which indicated that Davco owed Solomon money, although in a lesser amount than that claimed by Davidson in his financial statement.

5. *See,* e.g., *Solomon v. Davco, Inc., Richard A. Davidson, individually and in his capacity as President of Davco, Inc., and Beverly Davidson, jointly and severally,* Ingham County Circuit Court No. 79–24088 CK and *Sally A. Davidson v. Richard Davidson,* Ingham County Circuit Court No. 9143–S.

with access to such information, "except as authorized by this Title." 26 U.S.C. § 6103(a). Sections 6103(b)(1) and (2) define the terms "return" and "return information." Likewise, the statute sets forth a number of exceptions to the general rule, that is, conditions upon which "returns" or "return information" may properly be disclosed to certain specific persons in designated situations. 26 U.S.C. §§ 6103(c)–(g). Thus, in order to prevail here, Plaintiff must establish that one or more of the Defendants disclosed to some unauthorized third party "returns" or "return information" pertaining to Plaintiff, in a manner not authorized by an exception contained in Sections (c) through (*o*) of Section 6103, or some other provision of the Internal Revenue Code.

### III. Motion to Dismiss

In reviewing the instant motion, the Court's inquiry at this point of the proceedings—before any evidence is received by affidavit, admission or otherwise—is limited, merely, to whether or not the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. In making this determination, all allegations in the pleadings are to be taken at "face value" and should be construed in a light most favorable to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *California Motor Transport Company v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972). As stated by the Court of Appeals for the Sixth Circuit: "Well pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion." *Davis H. Elliot Co., Inc. v. Caribbean Utilities Company,* 513 F.2d 1176, 1182 (CA6 1975). All reasonable inferences which might be drawn from the pleadings must be indulged. *Fitzke v. Shappell,* 468 F.2d 1072, 1076 n. 6 (CA6 1972).

### IV. Were the acts complained of here "unauthorized" as a matter of law?

In support of their Motion to Dismiss, Defendants assert that Plaintiff has failed to state a claim which would entitle him to relief since all the disclosures alleged in Plaintiff's Complaint were fully authorized by law. More specifically, Defendants submit that 26 U.S.C. § 7217 creates a cause of action only where there has been a disclosure "in violation of the provisions of section 6103." Defendants' argument continues that section 6103 is not violated by any given disclosure of a "return" or "return information" if the disclosure is "authorized by this title." 26 U.S.C. § 6103(a). Essentially, Defendants submit that because the disclosures alleged in the Complaint were authorized and not violative of section 6103, the Complaint fails to state a claim under section 7217. Even if Plaintiff succeeded in establishing that the disclosures alleged therein actually took place, he would still not have alleged a set of facts which would entitle him to the relief requested, Defendants argue.

### A. Defendants Brady and Greene

Plaintiff's Complaint, at paragraph 8, alleges that Defendants Brady and Greene made an unauthorized disclosure of Plaintiff's Statement of Financial Condition to Edward Solomon and his attorney. Those Defendants claim, in their Motion to Dismiss, that the disclosure alleged in paragraph 8 of the Complaint was authorized by subsection (h)(4)(C), 26 U.S.C. § 6103(h)(4)(C).

The section upon which the Defendants rely in their motion provides in pertinent part that:

(4) *Disclosure in judicial and administrative tax proceedings.*—A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

\* \* \* \* \* \*

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceedings; or . . .

The term "tax administration," which is referred to above is defined by subsection (b)(4) of section 6103 as follows:

(4) *Tax administration.*—The term "tax administration"—

(A) means—

(i) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and

(ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and

(B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

The breadth of this definition was at issue before the United States Court of Appeals for the Second Circuit in the case of *United States v. Mangan,* 575 F.2d 32 (1978). Rejecting the defendant's argument that the phrase "tax administration" should be accorded a restrictive meaning, Judge Friendly wrote for the court:

We need not decide these questions, however, since the district judge was right in regarding the case as one of "tax administration." To be sure, one's initial impression might be that the simpler requirements for matters of "tax administration" related only to disputes between the Government and a taxpayer whose returns were relevant to his own tax liability and not to a controversy where the Government uses the returns of an employee of the Internal Revenue Service to prove that he defrauded it by obtaining refunds in the names of other taxpayers. In support of that view appellant refers us to the statement in the Senate Report that:

While the committee decided to maintain the present rules pertaining to the disclosure of returns and return information of the taxpayer whose civil and criminal tax liability is at issue, restric-

tions were imposed in certain instances at the pre-trial and trial levels with respect to the use of third-party returns where, after comparing the minimal benefits derived from the standpoint of tax administration to the potential abuse of privacy, the committee concluded that the particular disclosure involved was unwarranted.

S.Rep. No. 94–938, 94th Cong.2d Sess. 324–25 (1976), U.S.Code Cong. & Admin. News 1976, p. 3754. We do not find this persuasive. While defendant focuses on the first part of the quotation with its reference to taxpayers "whose civil and criminal tax liability is at issue," the passage in its entirety attempts merely to draw the distinction between these taxpayers and others whose liability was not at issue. This language does not evidence an intention to adopt a restrictive interpretation of "tax administration." Furthermore, the definition of "tax administration" in § 6103(b)(4) is so sweeping as to compel rejection of a restrictive interpretation. Clearly this case involved "the administration, management, [and] conduct . . . of the execution and application of the internal revenue laws" and "assessment, collection, enforcement [and] litigation . . . functions under such laws." Even if the Senate Report was more restrictive than we think it to have been, this would be a case in which to apply "the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute." *Greenwood v. United States,* 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956) (Frankfurter, J.). It follows that under § 6103(b)(4) and (h)(4) the United States Attorney could properly have obtained a subpoena for the returns for use before the grand jury or at trial. See F.R.Cr.P. 17(c). 575 F.2d at 39–40. (footnotes omitted).

The Second Circuit went on to hold that the term "tax administration" was unquestionably broad enough to encompass a prosecution which included counts for mail fraud, 18 U.S.C. § 1341 and filing false claims

against the United States, 18 U.S.C. § 286, as well as several counts for filing fraudulent tax returns, in violation of 26 U.S.C. § 7206(1).

The government's decision to prosecute Edward Solomon, during the course of which the disclosure alleged in paragraph 8 of the Complaint was made, commenced with a six count indictment for several alleged crimes under the Internal Revenue Code, including subscribing a false tax return, 26 U.S.C. § 7206(1), and tax evasion, 26 U.S.C. § 7201.[6] The conspiracy count to which Solomon ultimately pled guilty, and to which the Sentencing Memorandum filed by Defendants Brady and Greene was directed, can generally be classified as an offense of attempting to interfere with the administration of the Internal Revenue laws, which is a crime under the Internal Revenue Code. 26 U.S.C. § 7212. Thus, the Court accepts the Defendants' submission that the prosecution of Edward Solomon was a federal judicial proceeding pertaining to tax administration as contemplated by 26 U.S.C. § 6103(b)(4). *United States v. Mangan, supra; United States v. Olson,* 576 F.2d 1267 (CA8 1978), *cert. den.,* 439 U.S. 896, 99 S.Ct. 256, 58 L.Ed.2d 242 (1978).

Having determined that the prosecution of Solomon was a federal judicial proceeding pertaining to tax administration, the Court must now determine whether inclusion of Plaintiff's Financial Statement in the Sentencing Memorandum filed during the prosecution of Edward Solomon complied strictly with the terms of 26 U.S.C. § 6103(h)(4)(C). In doing that, the Court must first decide whether the financial statement "directly relate[d] to a transactional relationship" between Solomon, the "party to the proceeding," and Plaintiff, "the taxpayer." The "transactional relationship" between Solomon and Davidson

generally consisted of business dealings between the two, and more specifically of the financial rights and obligations of one to the other during a particular period in time. Plaintiff's financial statement contains a statement of how much money Plaintiff owed Solomon, and thus "directly relate[d]" to this transactional relationship. Accordingly, the Court specifically finds that Davidson's financial statement directly related to a transactional relationship between Solomon and Davidson.

Having made the above finding, the Court must now determine whether this transactional relationship "directly affect[ed] the resolution of an issue" in the Solomon prosecution. The issue addressed in the Sentencing Memorandum relating to Solomon involved what sentence the Court was to impose. A more specific issue in the Solomon prosecution, which Solomon himself had placed into issue, involved the current status of the account between Solomon and Davidson, and whether Solomon had made a material misstatement to the Probation Office regarding that account. As noted above, at the time of the presentence investigation following Solomon's guilty plea, Solomon filed a statement with the Probation Office which claimed that he owed Davco $500,000.[7] Seen in this light, it is apparent to the Court that the "transactional relationship" between Davidson and Solomon "directly affect[ed] the resolution of an issue" in the Solomon prosecution. Moreover, it is clear that the United States had the right, and, indeed, the obligation pursuant to Rule 32(c), to demonstrate to the Court the total falsity of Solomon's Financial Statement.

Certainly, the most compelling evidence regarding Solomon's account with Plaintiff's corporation was Plaintiff's own sworn statement that in fact his corporation owed Solomon over $1,000,000. Clearly, the

**6.** Solomon was also charged with several Title 18 crimes related to the Internal Revenue Code, including aiding and abetting the commission of an offense, 18 U.S.C. § 2(a), and conspiracy to defraud the United States, 18 U.S.C. § 371.

**7.** *See,* Rule 32(c), Federal Rules of Criminal Procedure. Under this Rule the United States has the obligation to inform the court when a criminal defendant who is about to be sentenced has made a material misstatement in a document he has filed with the Probation Office during the presentence investigation.

introduction of this evidence enhanced the sentencing court's ability to resolve an issue which was crucial in arriving at a just sentence for Solomon. This being the case, the Court finds, as Defendants have submitted, that the disclosure alleged in paragraph 8 of Plaintiff's Complaint was made in full compliance, as a matter of law, with 26 U.S.C. § 6103(h)(4)(C).[8] Accordingly, the Court will enter an order dismissing Defendants Brady and Greene.[9]

### B. Defendants John Doe I and John Doe II

Paragraph 7 of Plaintiff's Complaint alleges: "That Defendants John Doe I and John Doe II, employees of the Department of Treasury Internal Revenue Service, made an unauthorized disclosure of the statement of financial condition." Defendants submit, in response to this paragraph, that the alleged transmittal of Davidson's financial statement by Defendants John Doe I and John Doe II from the Internal Revenue Service to the United States Attorney's Office fully complied with 26 U.S.C. § 6103(h)(2)(C). That section provides:

> (h) *Disclosure to certain Federal officers and employees for purposes of tax administration, etc.—*
>
> \*     \*     \*     \*     \*     \*
>
> (2) *Department of Justice.*—In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal grand jury or preparation for any proceeding (or investigation which may result in such a proceeding) before a Federal grand jury or any Federal or State court, but only if—
>
> , \*     \*     \*     \*     \*     \*

> (C) such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.

■ In essence the above quoted statute permits the Internal Revenue Service to transmit to the Department of Justice or a United States attorney, return information which may meet the "transactional relationship" test of subsection (h)(4)(C), provided the information transmitted for their use or potential use in a Court proceeding. In the within matter, it has already been established that Davidson's financial statement did, in fact, meet the "transactional relationship" test of 26 U.S.C. § 6103(h)(4)(C). Thus, the Court likewise finds that the transmittal from the Internal Revenue Service to the Defendant United States Attorneys was authorized by the lesser standard of subsection (h)(2)(C), which only requires that the return information transferred between agencies have the *potential* for meeting this test.

### IV. Conclusion

For all the above reasons, the Court determines that, as a matter of law, both of the disclosures alleged in Plaintiff's Complaint were, accepting those allegations as true, permissible pursuant to 26 U.S.C. § 6103(h). As such, Plaintiff can prove no set of facts in support of his claim which would entitle him to relief under 26 U.S.C. § 7217. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, the Court will enter an Order this date granting Defendants' Motion and dismissing Plaintiff's Complaint.

---

**8.** Contrary to Plaintiff's suggestion, the Court specifically holds that subsection (h)(4)(C) is in the disjunctive rather than the conjunctive.

**9.** It also appears to the Court that Defendants Brady and Greene, acting in their capacities as United States Attorneys, were entitled to a prosecutorial immunity from prosecution in this matter. *See, Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).