775 F.2d 208
 56 A.F.T.R.2d 85-6184, 85-2 USTC P 9747
 Thomas E. RUECKERT and Barbara Rueckert, Plaintiffs-Appellants,
v.
The INTERNAL REVENUE SERVICE, an agency of the Government of
the United States; the State of Illinois; Governor James
Thompson of the State of Illinois; J. Thomas Johnson,
Director of Revenue of the State of Illinois; Richard E.
Dunn, Inspector in-charge, Department of Revenue Internal
Security Division, State of Illinois; Kenneth Groeper,
Inspector, Department of Revenue, State of Illinois, Ron
Spencer and Larry Gore, individually, Defendants-Appellees.
 Nos. 84-1945, 84-2154.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 23, 1985.
Decided Oct. 18, 1985.
As Corrected Oct. 21, 1985.
 
 Russell J. Stewart, Park Ridge, Ill., for plaintiffs-appellants.
 Gayle P. Miller, Dept. of Justice, Tax Div., Washington, D.C., Vincenzo Chimera, Illinois, Atty. Gen., Chicago, Ill., for defendants-appellees.
 Before BAUER, COFFEY, Circuit Judges, and GRAY, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 The plaintiffs, Thomas E. Rueckert and Barbara Rueckert, appeal the district court's determination, 587 F.Supp. 1238 (1984), in granting the defendants' motion for summary judgment, that they were not entitled to recover damages against state and federal tax officials under 26 U.S.C. Sec. 7217 for an allegedly unauthorized disclosure of their federal income tax returns. We affirm.
 
 I.
 
 2
 Thomas Rueckert is employed by the State of Illinois Department of Revenue ("IDR") as a Revenue Fraud Agent. In June of 1981, the Internal Security Division of the IDR received reports that Rueckert had been engaged in outside employment in violation of the Department's rules. Defendant Richard Dunn, the Inspector-inCharge of the Internal Security Division, examined Rueckert's Illinois state income tax returns and discovered that his reported income exceeded his salary for the years 1978, 1979 and 1980. To determine the source of the excess income, Dunn requested that Kansas City Service Center of the Internal Revenue Service to provide him with Rueckert's federal tax returns and income schedules for the taxable years 1978, 1979 and 1980. The requests were made on standard forms utilized by the IDR to obtain information from the IRS pursuant to a Federal/State Tax Coordination Agreement. The form recited that the requestor "understand[s] that disclosure or use of the information received for other than authorized tax administration purposes is subject to statutory penalties as provided by Section 7213 and 7217 of the Internal Revenue Code." In the portion of the form asking for the reason for the request, Dunn checked a box marked "Other" and wrote on the accompanying line, "to establish sources of income."[1] Either defendant Gore or defendant Spencer approved Dunn's request and forwarded the Rueckerts' joint tax returns to him in September of 1981. The return showed that Rueckert had been engaged in the practice of law while employed by the IDR. Dunn incorporated information relating to Thomas Rueckert's federal tax return[2] into a memorandum originally prepared by defendant Groeper. The memorandum was distributed to defendant Johnson, Director of Revenue for the State, who forwarded the investigative report to the Deputy Director of the IDR. The Deputy Director reprimanded Rueckert for engaging in unauthorized outside employment.
 
 
 3
 The Rueckerts filed suit in the United States District Court for the Northern District of Illinois alleging, inter alia, that the disclosure of their federal tax returns violated their right to confidentiality guaranteed by 26 U.S.C. Sec. 6103(a).[3] After the parties filed cross-motions for summary judgment, the district court found that the release of the information was not authorized by 26 U.S.C. Sec. 6103(d), the tax administration exception to confidentiality, because, in his opinion, the investigation into Rueckert's outside employment did not involve the administration of state tax laws. However, Judge Hart granted summary judgment in favor of the state and federal tax officials because disclosure had been made in a good faith but erroneous interpretation of the meaning of "tax administration" under Section 6103(d). The Rueckerts argue that the district court erred in granting summary judgment because the question of whether defendants Dunn, Gore and Spencer acted in good faith presented an issue of material fact that could not be resolved in a motion for summary judgment.[4] The defendants contend that the district court erred in finding that the internal investigation of a state revenue fraud agent was not "tax administration" under 26 U.S.C. Sec. 6103(d).
 
 
 4
 We first turn to the question of whether the IDR's investigation of its revenue fraud agent falls within the tax administration exception to Sec. 6103. Section 6103(a) of the Internal Revenue Code of 1954 provides that, as a general rule, tax returns and tax return information are confidential and may not be disclosed by any federal or state officer "except as authorized by this title." Included in the exceptions to the general rule of confidentiality is disclosure to state tax officials:
 
 
 5
 "(d)(1) In general.--Returns and return information shall be open to inspection by, or disclosure to, any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such law, including any procedures with respect to locating any person who may be entitled to a refund."
 
 
 6
 Section 6103(d)(1). Tax administration is defined as:
 
 
 7
 "(A)(i) The administration, management, conduct, direction, and supervision of the execution and application of the Internal Revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and
 
 
 8
 (ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and
 
 
 9
 (B) Includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions."
 
 
 10
 Section 6103(b)(4). We have not been provided with, and our research has failed to reveal, any cases on the question of whether a state tax department's investigation of one of its tax fraud agents is "tax administration" under Sec. 6103(d). Accordingly, we turn to the legislative history of the statute and other cases discussing the tax administration exception for guidance.
 
 
 11
 Section 6103 was enacted in response to the use of tax return information for political purposes revealed during Watergate. 122 Cong.Rep.S. 24012-13 (daily ed. July 27, 1976) (statements of Sen. Dole) ("Remarks"). In addition to protecting tax returns and return information from misuse for partisan political purposes, the Act ensures that, "the public, as well as various government entities, should not have wholesale, unregulated access to tax information ... [and that] federal tax administration should not be 'seriously impaired by the disclosure of return information.' " McSurley v. McAdams, 502 F.Supp. 52, 56-7 (D.C.D.C.1980). Thus, the Act encourages voluntary compliance with the tax assessment system by assuring taxpayers of the confidentiality of their returns. H.R.Rep. No. 94-658, 94th Cong., 2d Sess. 318, reprinted in 1976 U.S.Code Cong. & Ad.News 2897, 3747 ("House Report").
 
 
 12
 An examination of the legislative history of Section 6103(b), the exception for state tax administration, fails to reveal an explanation of the term "tax administration." House Report at 3745, 3765-68. Rather, the legislative history focuses on Congress' concern that states had, in the past, failed to utilize appropriate safeguards to ensure the confidentiality of federal tax information and had misused the information for political purposes. Id. at 3766. However, in Sec. 6103(l)(4) Congress expressly provided that present and former IRS employees' federal tax returns may be disclosed and examined in "personnel or claimant representative matters." Section 6103(l)(4).
 
 
 13
 "(l)(4) Disclosure of returns and return information for use in personnel or claimant representative matters.--
 
 
 14
 The Secretary may disclose returns and return information--
 
 
 15
 (A) upon written request--
 
 
 16
 (i) to an employee or former employee of the Department of the Treasury, or to the duly authorized legal representative of such employee or former employee, who is or may be a party to any administrative action or proceeding affecting the personnel rights of such employee or former employee; or
 
 
 17
 (ii) to any person, or to the duly authorized legal representative of such person, whose rights are or may be affected by an administrative action or proceeding under section 3 of the Act of July 7, 1984 (23 Stat. 258; 31 U.S.C. 1026), solely for use in the action or proceeding, or in preparation for the action or proceeding but only to the extent that the Secretary determines that such returns or return information is or may be relevant and material to the action or proceeding; or
 
 
 18
 (B) to officers and employees of the Department of the Treasury for use in any action or proceeding described in subparagraph (A), or in preparation for such action or proceeding, to the extent necessary to advance or protect the interests of the United States."
 
 
 19
 Sec. 6103(l)(4). An examination of the legislative history of this section reveals that Congress regarded IRS personnel matters as "tax administration."
 
 
 20
 "The IRS would be authorized to disclose, to the extent necessary for purposes of tax administration, returns and return information to any person with respect to his performance of services in connection with the processing, storage or transmission, or reproduction of returns and return information or in connection with the programing, maintenance, repair, testing, and procurement of equipment."
 
 
 21
 House Report at 3771. (emphasis added).
 
 
 22
 Furthermore, the two cases addressing the scope of the tax administration exception have defined the term broadly. United States v. Mangan, 575 F.2d 32 (2nd Cir.1978), cert. denied, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978); Davidson v. Brady, 559 F.Supp. 456 (W.D.Mich.1983), Aff'd. on other grnds, 732 F.2d 552 (6th Cir.1984). In Mangan an IRS agent's federal tax returns were utilized in his prosecution for preparing and filing fictitious tax returns to obtain refund checks. The Second Circuit approved the admission of the defendant's federal tax returns under the tax administration exception even though the criminal proceedings did not involve the determination of tax liability. "[T]he definition of 'tax administration' in Sec. 6103(b)(4) is so sweeping as to compel rejection of restrictive interpretation. Clearly this case involved 'the administration, management, [and] conduct ... of the execution and application of the internal revenue law' and 'assessment, collection, enforcement [and] litigation ... functions under such laws.' " Mangan, 575 F.2d at 40. In Davidson, Davidson's tax return was attached to another man's Sentencing Memorandum as proof that the other man, Solomon, had lied in a Financial Statement filed with the Probation Department. The court held that Davidson's right to confidentiality had not been violated because Solomon's prosecution was a federal judicial proceeding pertaining to tax administration as contemplated by 26 U.S.C. 6103(b)(4). Thus, the court agreed with the Second Circuit's holding that, in appropriate circumstances, disclosure of federal tax information may be authorized by the tax administration exception even though the proceeding did not involve the determination of tax liability.
 
 
 23
 With these principles in hand, we turn to the specific facts of this case. The IDR outside employment rule was adopted to ensure the integrity of its tax collection system and to encourage voluntary compliance by the public:
 
 
 24
 "Because of the sensitive nature of the mission of the Department of Revenue and the importance of maintaining the public's trust in the agency's integrity, there are some restrictions related to outside employment of the Department's personnel.
 
 
 25
 The Department requires an employee to obtain permission (see "Applying for Outside Employment" below) before accepting any outside employment or certain other responsibilities. Outside employment will be denied wherever its nature is considered a conflict of interest with the employee's duties in the Department of Revenue.
 
 
 26
 Permission for outside employment, which can be granted only by the Director of the Department of Revenue, will be revoked by the Director if it is determined that an employee's outside employment impedes or interferes with his duties in the department."
 
 
 27
 Employees Handbook, Illinois Department of Revenue, 11. In an affidavit supporting the defendants' motion for summary judgment, Dunn informed the court that he did not request the Kansas City Service Center to provide him with plaintiff Barbara Rueckert's tax returns but believed he received them because Thomas and Barbara Rueckert filed joint returns. Dunn did not disclose Barbara Rueckert's return information and kept the plaintiffs' returns in a locked safe. Dunn further stated that no other person viewed Thomas Rueckert's tax returns because the relevant information from his federal tax returns (the amount of his gross income for a three year period) was copied onto a "spread sheet" for analysis and the spread sheet, rather than the actual tax returns, was included in the investigative file.
 
 
 28
 Initially we note that the purpose of the outside employment rule is the same as that of Sec. 6103--ensuring the integrity of the tax collection system and encouraging voluntary compliance to ensure maintaining public trust. Moreover, investigating an IDR agent for potential conflicts of interest obviously is not the political misuse of federal tax return information that Congress sought to deter in enacting Section 6103. Furthermore, in maintaining the confidentiality of Barbara Rueckert's return and refraining from revealing any nonrelevant information from Thomas Rueckert's tax return, the IDR limited the disclosure to the objective it sought to accomplish--investigating, determining and disciplining an IDR employee for unauthorized outside employment. Thus, the record reveals that the IDR utilized appropriate safeguards to ensure the confidentiality of federal tax information as contemplated by Sec. 6103. Applying the relevant case law and the specific facts of this case, and based upon our review of the legislative history of Sec. 6103 we hold that the "management" and "supervision" of a state's internal revenue laws includes ensuring that its employees are free from conflicts of interest that could undermine the integrity of its system of administering the state tax laws.
 
 
 29
 "An appellate court may affirm a grant of summary judgment if the judgment or order is correct, although the reasons given by the trial court are erroneous." Pfeil v. Rogers, 757 F.2d 850, 856 (7th Cir.1985). Because the disclosure of the plaintiffs' federal tax returns was authorized by the tax administration exception of Sec. 6103(d), summary judgment is appropriate for all defendants. The district court's grant of summary judgment to the defendants is, therefore, AFFIRMED.
 
 
 
 *
 The Honorable William P. Gray, Senior District Judge for the Central District of California, is sitting by designation
 
 
 [1]
 In addition to the box marked "Other," the form provided three other boxes marked respectively: "to verify Sales/Income reported to State"; "to verify Capital Gain transaction"; and "to determine all income and expenses for tax fraud investigation."
 
 
 [2]
 The information relating to Mrs. Rueckert's tax liability was not incorporated into the investigative report
 
 
 [3]
 The appeal is limited to the question of whether the disclosure of the federal tax return information violated the confidentiality provision of Section 6103(a)
 
 
 [4]
 The Rueckert's have abandoned their claims against the other defendants