**Thomas J. SMITH, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 87–3067.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 13, 1990.

Wayne R. Golomb, Springfield, Ill., for plaintiff.

James A. Lewis, Robert J. Eggers, Asst. U.S. Attys., Springfield, Ill., David C. Hickman, Trial Atty., Tax Div., Washington, D.C., for defendant.

## OPINION

RICHARD MILLS, District Judge:

This is our third exploration into this terrain. We once again return to the uncommon facts surrounding the unauthorized disclosure of tax return information by an agent of the Internal Revenue Service to the Director of the Illinois Department of Revenue.

In a prior opinion we granted summary judgment for the Plaintiff on the issue of liability. *Smith v. United States*, 703 F.Supp. 1344 (C.D.Ill.1989). We are now presented with a motion for summary judgment by the Defendant regarding the issue of damages.

### I—Facts

At the time of the unauthorized disclosure, Ira Loeb was the District Director for the Springfield district of the Internal Revenue Service (IRS). As such, he was the federal official chiefly responsible for the administration of the federal tax laws within the district. Plaintiff, Thomas Smith, was employed by the Illinois Department of Revenue (IDR) and acted as the liaison official for the Federal–State Exchange Program (Program). The Program facilitates the exchange of confidential tax information between the IRS and the IDR.

As the liaison official, Mr. Smith was the contact point between the IRS and the IDR. During the relevant period, J. Thomas Johnson was the Director of the IDR.

In 1982, Thomas Smith and his wife were involved in a contested divorce action which was resolved by way of an agreed order on March 19, 1984. During the pending divorce action, Mr. Smith failed to file either federal or state tax returns for 1982 and 1983. In mid-October of 1984, information regarding Mr. Smith's tax delinquencies was brought to the attention of Mr. Loeb. Subsequently, Mr. Loeb received a memorandum from Eugene Winston, Chief of the Collection Division for the district, dated October 29, 1984. This memorandum stated that Mr. Smith had not filed a federal tax return for the years 1982 and 1983 and that he had outstanding tax liabilities for the years 1980 and 1981. After receiving this information, Mr. Loeb determined that it indicated a potential state tax violation and that this delinquency reflected poorly on Mr. Smith's ability to carry out his liaison responsibilities. Mr. Loeb then decided that the IRS should request that Mr. Smith be relieved of his position as the liaison official.

To accomplish his goal, Mr. Loeb determined that the Director of the Illinois Department of Revenue should be contacted directly. Cognizant of the strict disclosure laws, however, Mr. Loeb consulted IRS counsel for their opinion of whether the disclosures about Mr. Smith could legally be made. It was determined by counsel that the disclosure could be made lawfully under 26 U.S.C. § 6103(d) of the Internal Revenue Code.[1] Counsel further advised Mr. Loeb on the implications of disclosure in light of *Rueckert v. Gore*, 587 F.Supp. 1238 (N.D.Ill.1984),[2] which involved disclosures of federal tax return information to the Illinois Department of Revenue. After

---

1. All references to the "Code" are to the Internal Revenue Code of 1954 as amended, unless otherwise noted. This is the pertinent Code for the time period at issue. The Code has since been redesignated as the Internal Revenue Code of 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085.

2. *Rueckert* was subsequently affirmed in *Rueckert v. Internal Revenue Service*, 775 F.2d 208 (7th Cir.1985). The appellate court decision is inapposite with respect to the advice given Mr. Loeb as the appellate court opinion was issued subsequent to the events in question here.

receiving clearance from the IRS counsel, Mr. Loeb personally provided Mr. Johnson, the Director of Revenue, with the Winston memorandum and requested that Mr. Smith be relieved of his liaison responsibilities.

In his memorandum in opposition to the current motion for summary judgment, Mr. Smith adds these additional facts. Mr. Smith obtained an extension of time within which to file his state tax returns because of the pending divorce action. During the early summer of 1984 Richard Dunn, the Special Agent in Charge of the Internal Investigation Division of the IDR, discovered that Mr. Smith had failed to file his 1982 state tax return and that his extension had expired. Mr. Smith admitted to Mr. Dunn that he had failed to file the return because of the contested divorce and further informed Mr. Dunn that he had also not filed his 1983 tax return. Mr. Smith also informed his supervisor and the head of the personnel department of his failure to file his 1982 and 1983 state tax returns. Mr. Dunn, apparently satisfied with Mr. Smith's explanation of his failure to file, closed the investigation without taking any disciplinary action or informing Mr. Johnson.

## II—Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). Nevertheless, the rule is also well established that the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Thus, the "preliminary question for the

judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 2548, 2552, 91 L.Ed.2d 265 (1986). Applying this standard, the Court now turns to the case at bar.

## III—Section 6103(d) Violation

In a prior opinion in this case we held that Mr. Loeb's disclosure of the Winston memorandum to Mr. Johnson violated § 6103(d) of the Code. The pertinent subsections of that section state:

(a) General Rule.—Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States

\*     \*     \*     \*     \*     \*

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

\*     \*     \*     \*     \*     \*

(d) Disclosure to State tax officials.—Returns and return information with respect to taxes imposed by chapters 1, 2, 6, 11, 12, 21, 23, 24, 31, 44, 51, and 52 and subchapter D of chapter 36, shall be open to inspection by or disclosure to any State agency, body, or commission, or its legal representative, which is charged under the laws of such State with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws, including any procedures with respect to locating any person who may be entitled to a refund. Such inspection shall be permitted, or such disclosure made, only upon written request by the head of such agency,

body, or commission, and only to the representatives of such agency, body, or commission designated in such written request as the individuals who are to inspect or to receive the return or return information on behalf of such agency, body, or commission. Such representatives shall not include any individual who is the chief executive officer of such State or who is neither an employee or legal representative of such agency, body, or commission nor a person described in subsection (n).

26 U.S.C. § 6103. Section 7431 of the Code authorizes suit against the United States where any "officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 . . . ." *Id.* § 7431(a)(1).

The State of Illinois and the IRS have entered into an Agreement on Coordination of Tax Administration (Coordination Agreement) and a further agreement entitled Implementation Agreement Between the Illinois Department of Revenue and the Internal Revenue Service (Implementation Agreement). The Coordination Agreement is the basic agreement which provides for the exchange of tax information between the IDR and the IRS. *Internal Revenue Service Disclosure of Official Information Handbook*, at 1272–382, ¶ (33)–41(1) (1987).

Section II(A)(6) of the Implementation Agreement provides the method by which the IRS is to disclose information to the IDR when such information will not be transmitted to the IDR under any other provision of the agreement. Section II(A)(6) provides that when an IRS official obtains return information which may be evidence of any intentional or inadvertent understatement of tax liability or violation of state tax laws the IRS official shall contact the IDR liaison official and describe the return in sufficient detail to ascertain the agency's need and potential use for the return or return information. If, in the judgment of the IRS official, the IDR has a need and use for the return or return information he shall then provide the agency liaison official with sufficient information, including identifying information, to make a specific request for the return or return information. The state agency can then make a specific request of the IRS for the return or return information.

In our prior opinion we held that Mr. Loeb violated § 6103 by simply handing over the information to Mr. Johnson without first describing the nature of the information and making the required "need and use determination." We are now left with the issue of damages.

### IV—Section 7431 Damages

Section 7431(c) of the Code provides

(c) Damages.—

In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

(1) the greater of—

(A) $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, or

(B) the sum of—

(i) the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus

(ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

(2) the costs of the action.

26 U.S.C. § 7431(c). Mr. Smith has sought $1,500,000 as actual damages and punitive damages in the instant action. The Government's motion for summary judgment is premised upon the lack of proximate cause between the disclosure of the tax return information and Mr. Smith's discharge from his position with the IDR. The Government contends that the lack of proximate cause results in Mr. Smith being unable to recover anything except $1,000 in statutory damages.

### V—Proximate Cause

■ In our prior opinion we held that Mr. Loeb had violated § 6103 by disclosing

Mr. Smith's tax return information to Mr. Johnson without following the requirements of Section II(A)(6) of the Implementation Agreement. The Government contends that even if Mr. Loeb had complied with the requirements of Section II(A)(6), the information still would have been provided to Mr. Johnson and Mr. Smith would have been discharged. Thus, Mr. Loeb's violation of § 6103 was not the cause of Mr. Smith's damages.

Without question "[a]n act or an omission is not regarded as a cause of an event if the particular event would have occurred without it." W. Prosser, W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 41, at 265 (5th ed.1984).

In response to the Government's motion for summary judgment, Plaintiff contends that Illinois courts apply the concept of proximate cause rather than the "but for" test of causation. In support of this assertion, Plaintiff cites Illinois Pattern Jury Instruction 15.01. Plaintiff is only partially correct in this contention.

The concept of causation encompasses both an element of "factual cause" and one of "legal cause." The element of factual cause involves the "but for" test of causation and is at issue in this case. The concept of legal cause rests upon the policy of ending a party's potential liability for his acts at some point along the continuum of factual causation. J. Lee & B. Lindahl, *Modern Tort Law* § 4.05, at 137 (rev. ed. 1988). In effect, the law seeks to avoid imposing liability on the maker of the horseshoe for the loss of the war. Specifically, "[t]he injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence...." *Neering v. Illinois Cent. R.R.*, 383 Ill. 366, 50 N.E.2d 497 (1943).

Plaintiff also is mistaken in characterizing the issue presently before this Court as whether the unauthorized disclosure of the tax return information "caused" Mr. Smith's discharge and resulting lost wages and benefits. Rather, the issue is whether the violation found by this Court—not the disclosure itself—was the cause of Mr. Smith's damages. It would have been perfectly proper for Mr. Loeb to disclose the tax return information to Mr. Johnson by the appropriate method, i.e. following the requirements of Section II(A)(6) of the Implementation Agreement. The question we are called upon to consider is whether the disclosure would have occurred had Mr. Loeb followed the requirements of the Implementation Agreement.

In support of its motion for summary judgment, the Government has submitted the affidavit of Mr. Johnson. Mr. Johnson states that during his tenure as director of the IDR it was his policy to discharge any employee who wilfully failed to comply with the tax laws, such as failing to timely file tax returns. This policy was memorialized in the IDR employee handbook. Mr. Johnson states that if Mr. Loeb had informed him that he possessed information indicating that an IDR employee had failed to timely file tax returns he would have, pursuant to his policy, requested the nonfiler's name and other specific and pertinent information from Mr. Loeb. Prior to Mr. Loeb's disclosure on October 29, 1984, Mr. Johnson was unaware that Mr. Smith had failed to timely file his tax returns. Mr. Johnson concludes that if it had come to his attention prior to October 29, 1984, that Mr. Smith had wilfully failed to timely file his tax returns, he would have, pursuant to his policies and practices, sought the discharge of Mr. Smith.

The Government has also submitted the affidavit of Mr. Loeb wherein he states that, had he followed the correct procedures he would have made the same decision to turn over Mr. Smith's tax return information to Mr. Johnson. The Government relies on these two affidavits in arguing that even if Mr. Loeb had followed the correct procedures and not violated Section II(A)(6) of the Implementation Agreement the same result would have occurred and Mr. Smith would have been discharged from his position.

Plaintiff raises three arguments in response to the Government's motion for

summary judgment. First, Plaintiff contends that because Mr. Dunn knew of Mr. Smith's failure to file his Illinois tax returns approximately three months prior to Mr. Loeb disclosing this information to Mr. Johnson, the IDR had no use for the information. This argument, however, assumes that if anyone in the IDR has knowledge of certain taxpayer information, no other person within that agency who is unaware of that information can ever have a need or use for the information. To accept this argument would mean that disclosures to the IDR would be unauthorized simply because someone within that agency already possessed the same information. To carry this argument to its logical extreme, the Plaintiff could contend that prior to Mr. Dunn discovering his failure to file, the IDR did not have any need or use for the information because Mr. Smith, a high level employee within the IDR, knew that he had failed to file his tax returns. The Implementation Agreement clearly provides that the need and use determination shall be made "in the judgment of" the IRS official making the disclosure. Therefore, Mr. Dunn's knowledge of Mr. Smith's failure to file his tax returns is irrelevant to the present issue because at the time he made the disclosure Mr. Loeb was unaware that anyone within the IDR had knowledge of Mr. Smith's failure to file.

Plaintiff's second argument in response to the Government's motion for summary judgment is that if Mr. Loeb had followed correct procedures the disclosure would never have been made because disclosing tax return information to a state tax agency for the purpose of an "integrity check" on its employees does not involve "administration of state tax laws." One of the requirements of § 6103 is that the tax return information disclosed to the state agency must be disclosed for the purpose of the administration of state tax laws. *See* 26 U.S.C. § 6103(d).

In support of this argument, Plaintiff cites ¶ (33)43.4 of the IRS disclosure handbook which states that disclosures for integrity checks can only be made if specifically authorized by the Implementation Agreement. We must reject Plaintiff's argument for a pair of reasons. A. The provision of ¶ (33)43.4 was not included in the disclosure handbook on October 29, 1984, the date the subject disclosure was made. B. We have previously held that the disclosure in this case was made in furtherance of the administration of state tax laws. *Smith v. United States,* 703 F.Supp. 1344, 1347 (C.D.Ill.1989); *see also Rueckert v. Internal Revenue Serv.,* 775 F.2d 208 (7th Cir.1985) (disclosure by IRS of plaintiff's federal tax returns pursuant to IDR's investigation into possible conflicts of interest was authorized by the tax administration exception to confidentiality). Therefore, the disclosure at issue in this case was clearly authorized by the tax administration exception to § 6103 of the Code and would have been made even if Mr. Loeb had followed the requirements of the Implementation Agreement.

The final argument Plaintiff advances in response to the Government's motion for summary judgment is that the affidavit of Mr. Johnson asserting that he would have taken the same action had Mr. Loeb disclosed the information in a proper manner should be struck and not considered by this Court because it is merely speculative.

The Government responds to this argument by citing *United States v. Ranney,* 719 F.2d 1183 (1st Cir.1983), which approved the use of hypothetical questions in a criminal prosecution for fraud. In that case, the defendant's objection to the hypothetical question of whether the victim would have made the investment had he known that the defendant's representations were false was that the answer was inherently speculative because the victim had never confronted the situation posed by the question. The *Ranney* court rejected this argument and held that the questions were proper. *Id.* at 1189 & n. 10 (citing *United States v. Bush,* 522 F.2d 641, 649–51 (7th Cir.1975), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976), and *United States v. Isaacs,* 493 F.2d 1124, 1162 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974)). However, even assuming that such objection to a hypothetical question would be valid, in

the case at bar the same argument cannot logically be made. Mr. Johnson discharged Plaintiff after receiving information from the IRS that he had failed to timely file his tax returns. Whether that information was properly conveyed pursuant to Section II(A)(6) of the Implementation Agreement, or came to Mr. Johnson's attention in violation of that agreement, is immaterial to the issue of whether Mr. Johnson would have discharged Plaintiff.

It is well established that when a defendant moves for summary judgment, the plaintiff has the burden to file affidavits or other materials supporting the allegations of the complaint. *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969). Although Plaintiff has filed voluminous supporting materials in his response to Defendant's motion for summary judgment, these materials do not dispute the affidavits filed by Mr. Johnson or Mr. Loeb and thus no genuine issue of material fact remains.

Therefore, we hold that if Mr. Loeb had followed proper procedures as established by the Implementation Agreement when he disclosed Plaintiff's tax return information to Mr. Johnson, Mr. Smith would still have been discharged and thus Mr. Loeb's failure to follow the provisions of the Implementation Agreement was not the cause of Plaintiff's injuries. Consequently, Plaintiff is not entitled to recover any of the actual damages he claims he suffered.

## VI—Damages

### A. Statutory Damages

█ Section 7431(c) of the Code provides that a taxpayer who establishes that his return information was disclosed in violation of § 6103 has a choice between either statutory damages of $1,000 for "each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable" or "the sum of his actual damages plus, in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages." Thus, Mr. Smith is clearly entitled to a choice between his actual damages or statutory damages. Because we hold that the disclosure by Mr. Loeb in violation of the Implementation Agreement was not the cause of any actual damages suffered by Mr. Smith, Plaintiff is limited to his statutory damages.

Plaintiff argues that he is entitled to $9,000 in statutory damages. Plaintiff contends that his statutory damages should be computed as $1,000 for each year disclosed as well as each person to whom such disclosure was made. Plaintiff asserts that his return information for 1980–1983 was disclosed to both Mr. Johnson and Mr. Dunn and further that Mr. Loeb admitted that he also disclosed the return information for 1984 to Mr. Johnson thus equalling nine separate disclosures. As support for this argument, Plaintiff relies on *Malis v. United States*, 59 A.F.T.R.2d 87–988, 1986 WL 15721 (C.D.Cal.1986).

In *Malis*, an IRS collection officer disclosed numerous items of tax return information on two separate occasions. The court held that the taxpayer was entitled to $2,000 in statutory damages for the two separate acts of disclosure. Thus, *Malis* does not support Plaintiff's position. On the other hand, the court in *Rorex v. Traynor*, 771 F.2d 383 (8th Cir.1985), supports the result we reach in this case. In *Rorex*, an IRS agent disclosed tax return information for two separate years regarding a husband and wife to their bank. The court held that the taxpayers were each entitled to the statutory award of $1,000. In the case at bar, Mr. Loeb only made one "act of unauthorized disclosure" when he provided a copy of the Winston memorandum to Mr. Johnson and Mr. Dunn on October 29, 1984.

### B. Punitive Damages

Plaintiff contends that the disclosure by Mr. Loeb to Mr. Johnson was wilful and thus he is also entitled to punitive damages. We disagree with Plaintiff's position for two reasons.

█ First, § 7431(c)(1) clearly provides that a taxpayer whose return information is disclosed in violation of § 6103 is entitled to the greater of $1,000 for each act of unauthorized disclosure *or* the sum of his

actual damages plus, in the case of a wilful disclosure, punitive damages. Thus, the clear language of the statute provides that when a taxpayer only recovers statutory damages, punitive damages are unavailable to him. Plaintiff once again cites the *Malis* decision in support of his argument that a taxpayer who recovers statutory damages may also recover punitive damages. Although the *Malis* court awarded the disgruntled taxpayer punitive damages as well as statutory damages, the opinion is barren of any reasoning on this question. Furthermore, the *Malis* court cited the decision in *Mid–South Music Corp. v. United States*, 56 A.F.T.R.2d 85–6250, 1985 WL 3673 (M.D.Tenn.1985), as support for its decision to award punitive damages in addition to statutory damages. Once again, the court in *Mid–South Music* failed to offer any justifiable reason for its decision to award punitive damages in addition to statutory damages. Furthermore, the decision in *Mid–South Music* was subsequently reversed by the Sixth Circuit. *See Mid–South Music v. United States*, 818 F.2d 536 (6th Cir.1987).

The second reason we believe that Plaintiff is not entitled to punitive damages is because they may be awarded only in the case of a wilful disclosure or a disclosure which is the result of gross negligence. "Wilful conduct" is that which was done without ground for believing that it was lawful or conduct marked by a careless disregard of whether one has a right to act in such a manner; while "gross negligence" means either a wilful act or an act performed in wanton or reckless disregard of the rights of another. In the present case, the material submitted in support of the motion for summary judgment and in opposition to that motion establishes that prior to making the disclosure, Mr. Loeb consulted with Cathy Barley, District Disclosure Officer, Sarah Wreford, Regional Disclosure Officer, and Attorney Jeff Ehrlich, District Counsel. Both Ms. Barley and Ms. Wreford testified that they told Mr. Loeb that the disclosure was authorized under § 6103. Furthermore, Mr. Ehrlich advised Mr. Loeb on the effect of the district court opinion in *Rueckert*

which, Mr. Ehrlich stated, was distinguishable and would not prohibit the disclosure Mr. Loeb sought to make. Thus, even if § 7431 were to permit punitive damages in this situation, we would hold as a matter of law that Mr. Loeb's conduct in making the disclosure was neither "wilful" nor the result of "gross negligence" and thus Plaintiff is unable to recover punitive damages.

## VII—Conclusion

At last we come to the final chapter of this story. We hold that the violation of the Implementation Agreement by Mr. Loeb was not the proximate cause of any damages suffered by Mr. Smith and thus Mr. Smith is limited to $1,000 in statutory damages plus his costs of this action. Furthermore, the violation of the Implementation Agreement by Mr. Loeb was neither wilful nor the result of gross negligence and thus, even if the statute permitted punitive damages to be awarded, they would not be available to Plaintiff in this case.

*Ergo*, Defendant's motion for summary judgment (d/e 88) is ALLOWED. Plaintiff is awarded the sum of $1,000 in statutory damages plus costs.

Case CLOSED.