The HAMMOND COMPANY, a California corporation; State Savings and Loan Association, a California corporation, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Andrew T. Fellner and Robert B. Palmer, Intervenors.

Civ. No. 82–844.

United States District Court, S.D. California.

July 14, 1983.

Philip F. Marantz, Richard H. Cooper, Marlena J. Mouser, Freshman, Mulvaney, Marantz, Comsky, Kahan & Deutsch, Beverly Hills, Cal., Milton A. Miller, Latham & Watkins, Los Angeles, Cal., for plaintiffs.

Peter K. Nunez, U.S. Atty., Kathryn A. Snyder, Asst. U.S. Atty., San Diego, Cal., Nancy Morgan, Trial Atty., Tax Div. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

TURRENTINE, Chief Judge.

Plaintiffs State Savings and Loan and The Hammond Company move to amend a prior judgment to provide for the award of interest on money wrongfully levied upon by the Internal Revenue Service. The wrongful nature of the levy was determined on a motion for summary judgment in favor of plaintiffs on March 21, 1983.

## I. FACTS

In June of 1982, Andrew Fellner and Robert B. Palmer, intervenors in this action, were arrested by federal agents for the violation of various federal anti-fraud statutes.[1] At the time of Fellner's arrest, he was carrying a briefcase containing $1,132,-550 ("the Briefcase money"). This money was seized and immediately deposited into an interest-bearing account. Shortly thereafter, F.B.I. agents located a second cache in a locker at the Seattle airport. This fund consisted of $100,000 in U.S. dollars and $1,169,385 in Swiss Francs ("the Seattle money"). The Seattle money was seized by the F.B.I. and deposited in a vault at its regional office in Seattle.

The arrests and seizures were based on a two count information implicating Fellner and Palmer in an elaborate real estate fraud and forgery scheme to defraud plaintiff State Savings of approximately $9 million. Upon learning of these seizures, the Internal Revenue Service served the F.B.I. on June 22, 1982 with a notice of levy on what it characterized as Fellner and Palmer's income. On July 7, 1982, Fellner and Palmer pleaded guilty to the charges of fraud. During this period, several calls had been made and at least one letter sent by State Savings and Loan to the I.R.S. requesting that the levy on the Seattle money be released and that the money be returned to State Savings or at least be deposited in an interest-bearing account.

Receiving no response, State Savings and Loan filed on July 20, 1982 an action against the United States for wrongful levy under 26 U.S.C. § 7426. Meanwhile, though having pleaded guilty to criminal fraud and having turned the proceeds of the fraud over to the government, Fellner and Palmer were still being pursued by the Internal Revenue Service for taxes owed on their putative "income." On August 24, 1982, Fellner filed a suit against the United States seeking use of the confiscated proceeds to discharge his tax liability under the Internal Revenue Service levy. On October 29, 1982, the government in its answer admitted that the Service was in "possession" of the approximately $2.4 million taken

---

1. 18 U.S.C. § 371 (Conspiracy), 18 U.S.C. § 1014 (false statements to obtain credit), and 18 U.S.C. § 1341 (mail fraud).

from Fellner and Palmer in June of 1982.[2] This action was ultimately dismissed by stipulation on March 26, 1983.

On November 25, 1982, State Savings, still out of possession, brought a motion for summary judgment on its suit against the government for wrongful levy on the amount seized plus interest as provided under 26 U.S.C. § 7426(g). While this motion was pending, State Savings, the F.B.I., and the Internal Revenue Service entered into a stipulation on December 7, 1982 providing that the Seattle money be deposited in an interest-bearing account at State Savings, and that the Swiss francs be converted into U.S. dollars and deposited in an interest-bearing account. On March 21, 1983, this Court granted plaintiffs' motion for summary judgment against the United States for the amount wrongfully seized. This motion seeks to amend the prior judgment to provide for an award of interest on the sum under 26 U.S.C. § 7426(g).

## II. ISSUES

The principal issue before this Court is whether plaintiff State Savings is entitled to interest on the Seattle money[3] from June 22, 1982, the date of the levy, as urged by plaintiffs, or from December 7, 1982, the date of the stipulation, as urged by the government.

26 U.S.C. § 7426(g) provides that

"[i]nterest shall be allowed at an annual rate established under section 6621(1) in the case of a judgment pursuant to subsection (b)(2)(B), from the date the Secretary *receives* the *money* wrongfully

levied upon to the date of payment of such judgment." (italics added).

An award of interest to plaintiffs under this statute requires the resolution of two issues, namely, whether constructive possession of the funds by the Internal Revenue Service under the levy satisfies the "received" requirement under the statute, and if so, whether the term "money" as used in the statute was intended to include foreign currencies, specifically, the $1,169,385 in Swiss francs.

## III. DISCUSSION

With respect to the first issue, plaintiffs offer the following analysis. In *Phelps v. United States,* 421 U.S. 330, 337, 95 S.Ct. 1728, 1732, 44 L.Ed.2d 201 (1975), the Supreme Court held that a tax levy creates a "custodial relationship" between the holder of the subject property and the United States, reducing the property to the "constructive possession" of the government. *See also Chevron U.S.A., Inc. v. United States,* 705 F.2d 1487 at 1490 (9th Cir.1983). Since the Internal Revenue Service levied on the Seattle money on June 22, 1982, plaintiffs insist that their right to interest under the statute accrued on that date. Plaintiffs cite defendant's admission[4] in the answer filed in response to Fellner's complaint as further proof of the Internal Revenue Service's possession of the fund, possession which plaintiffs insist is sufficient to satisfy the "received" requirement under § 7426(g).

The Court, however, is not convinced of the sufficiency of constructive possession under § 7426(g), and hence, must deny

**2.** The government's answer admitted the following: "The Internal Revenue Service now has in its possession approximately $2,400,-000.00 confiscated from and/or surrendered by Plaintiff and Robert Palmer in June, 1982."

**3.** The Briefcase money seized from Fellner at the time of the arrest was immediately turned over to the Internal Revenue Service. Thus, the government does not contest plaintiffs' entitlement to interest on this sum.

**4.** See note 2 *supra* for text of admission. The court, however, does not find this admission dispositive. The government admitted "possession," not "actual possession." To the ex-

tent the type of possession referred to was "constructive," the government's admission is consistent with the court's finding in this case. To the extent the government meant "actual possession," the admission is treated as mere evidence, *Enquip, Inc. v. Smith-McDonald Corp.,* 655 F.2d 115, 118 (7th Cir.1981), *Continental Insurance Co. of New York v. Sherman,* 439 F.2d 1294, 1298 (5th Cir.1971), and as evidence is countered by the December 7, 1982 stipulation which stated that the Seattle money was currently being held by the Seattle office of the F.B.I.

plaintiffs' request for interest. The Court's ruling is grounded in its reading of the statute, the legislative history, and the Court's general reluctance to impose an obligation on the government absent express statutory authority.

 Prior to a discussion of these three factors, it should be noted that interest on judgments obtained against the United States is available only where authorized by contract or statute. *U.S. v. Louisiana,* 446 U.S. 253, 264–65, 100 S.Ct. 1618, 1625, 64 L.Ed.2d 196 *reh'g denied,* 447 U.S. 930, 100 S.Ct. 3007, 65 L.Ed.2d 1110 (1980). No contract is alleged by plaintiff. Where a statute provides for interest, as in the case of 26 U.S.C. § 7426(g), it constitutes a waiver of sovereign immunity and should be strictly construed. *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1966); *United States v. One (1) Douglas A–26B Aircraft,* 662 F.2d 1372, 1375 (9th Cir.1981). A statute which waives sovereign immunity must be read narrowly, and interpreted in the manner most favorable to the government. *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 268 (1951), *reh'g denied,* 342 U.S. 899, 72 S.Ct. 228, 96 L.Ed. 673 (1952). *Lamarand v. Lamarand,* 499 F.Supp. 1109, 1111 (C.D.Cal.1980). A statute will only be deemed to effect a waiver where the operative language is clear and unambiguous. *Holly v. Chasen,* 639 F.2d 795, 796 (D.C. Cir.), *cert. denied,* 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981); *Rooney v. United States,* 694 F.2d 582, 582 (9th Cir.1982).

With this judicial philosophy in mind, the Court shall proceed to address plaintiffs' argument. Plaintiffs contend that the date of receipt should be treated as the date on which the I.R.S. took constructive possession of the funds i.e., the date of levy.

Such an interpretation is clearly not in accord with the plain ordinary meaning of the statute. Congress said "receives," not "the date of levy." If Congress intended to impose liability on the government for interest from the date of levy, it could certainly have used such language. It chose instead to limit the entitlement to interest from the date received. Such a limitation should not be regarded lightly.

Congress' recognition of the distinction between levy and receipt is evidenced by Section (a)(1) of the statute which provides that a wrongful levy action may be brought "without regard to whether such property has been surrendered to or sold by the Secretary or his delegate." If the Court adopts plaintiffs' interpretation of § 7426(g), the Internal Revenue Service could conceivably be held liable for the payment of interest on funds which, due to the contumacy of a third party, the Service has not actually received, though subject to levy and within its constructive possession. Such a construction of the statute would clearly work a hardship on the government, and could not conceivably have been Congress' aim in enacting the provision.

The legislative history of section 7426(g) confirms this view. While the Senate Report is silent on the section, the House Report of the Committee on Ways and Means provides the court with some guidance on the proper interpretation of § 7426(g). The Report states that "money wrongfully levied upon is received at the time the Secretary of the Treasury or his delegate [5] acquires possession of such money." [6] (italics added). The House Committee expressly chose not to equate the act of levying with the act of receipt. Receipt occurs only when the Secretary of Treasury

---

**5.** The "or delegate" language which appeared in the original statute was struck in 1976 by Public Law 94–455. The amendment was one of a series of general housekeeping amendments contained in the Tax Reform Act of 1976. Since "Secretary" was redefined under the same amendment to include the "Secretary or his delegate", the change in language had no substantive effect.

**6.** Staff of the Committee on Ways and Means, 89th Cong. Act of 1966 (1966), p. 78. The passage of the Federal Tax Lien Act culminated an extensive effort by the American Bar Association to remedy problems involved in collecting delinquent federal taxes. For a more comprehensive history of the Act, *see Gordon v. United States,* 227 Ct.Cl. 328, 649 F.2d 837, 840–41 (Ct.Cl.1981).

"acquires possession" of the money subject to the levy. Distinctions cradled in the statute's legislative history, however subtle, should nonetheless be given probative weight in the Court's ascertainment of Congressional intent.

Moreover, no evidence has been adduced by plaintiff with reference to either the language of the statute or its legislative history which suggests that the purpose of the statute is compensatory in nature, and hence, designed to compensate the plaintiffs for interest lost from the date of levy. To the contrary, the statutory scheme suggests that the underlying policy is the avoidance of the unjust enrichment of the government. For example, where the government wrongfully levies on property, the third party's recovery of damages from the government under § 7426(b)(2)(C)(ii) is limited to the value of the property as determined *prior* to the levy. This ceiling suggests an intent by Congress to compensate the third party only for the value of the item seized, and not for any loss suffered by the third party resulting from the government's wrongful retention. Thus, the plaintiffs' interpretation is not only unsupported by the statute's language and legislative history, but is also inconsistent with the apparent policy of the statute.

Finally, substitution of date of levy for receipt would impose an affirmative duty on the I.R.S. to immediately enforce levies where no such duty had previously existed. Courts should be loathe to fashion from whole cloth affirmative duties absent some clearly expressed common law or statutory imperative, particularly in interpreting a statutory waiver of sovereign immunity. Such an obligation would force the I.R.S. to both serve the notice of levy and take actual possession of the money on the same date. Any delay in the actual transfer would be charged to the I.R.S., an expense which may not always be recoverable from the third-party for any number of reasons, including insolvency or prior judicial attachment.

For the reasons set forth above, the Court rejects plaintiffs' interpretation of 26 U.S.C. § 7426(g) and concludes that plaintiffs are not entitled to interest on the Seattle money prior to the December 7 stipulation. Consequently, the Court need not address the issue whether Swiss francs qualify as "money" within the meaning of 26 U.S.C. § 7426(g).

Let judgment enter accordingly.