**Harold G. ROREX and Geneva M. Rorex, Appellees,**

v.

**Steven P. TRAYNOR, Individually and in his Former Capacity as an Internal Revenue Officer, Appellant.**

**No. 84–2308.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1985.

Decided Aug. 22, 1985.

Thomas A. Gick, Washington, D.C., Justice Dept., for appellant.

Stanley D. Rauls, Little Rock, Ark., for appellees.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and NICHOL,* Senior District Judge.

BRIGHT, Senior Circuit Judge.

Harold and Geneva Rorex (taxpayers) brought this statutory action against Steven Traynor, a former Internal Revenue Service (IRS) officer, seeking damages because of his alleged wrongful disclosure of information regarding the taxpayers' federal income tax returns. The taxpayers recovered a combined judgment of $45,000 representing actual and punitive damages assessed by a federal court jury. After denial of post trial motions for judgment n.o.v. or a new trial, Traynor appeals, contending that the district court erred as a matter of law: (1) in concluding that the disclosure violated the Internal Revenue Code, and (2) in failing to direct a verdict of dismissal. In addition, Traynor argues that the jury's damage award was excessive. We affirm in part but remand for the entry of a judgment of $1,000 for each taxpayer, without punitive damages, based on the applicable statute.

I. BACKGROUND.

In February 1981, the taxpayers met with Traynor, who was then a revenue

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

officer trainee with the Internal Revenue Service, and executed an installment agreement for the payment of their 1977, 1979, and 1980 income taxes. Subsequently, a dispute developed over whether the taxpayers were making payments under the agreement in a timely fashion. The taxpayers asserted that all payments had been on time, but agreed to enter into a second installment agreement on August 7, 1981. The terms of the second agreement were identical to the terms of the first: the taxpayers were required to pay off their balance in $40 monthly payments due the 10th of each month. It is undisputed that the taxpayers paid their installments under the second agreement when due.

Both installment agreements were executed on IRS Form 433–D. This form carries the statement: "This agreement may require managerial approval. If it is not approved, you will be so notified." On August 25, 1981, Traynor's supervisor Charles Schaefer allegedly disapproved the second installment agreement. Schaefer instructed Traynor to request full payment on the account and to file a tax lien and serve a levy on the taxpayers' property if full payment was not made. Traynor testified that on September 16, 1981, he informed the taxpayers of the disapproval and requested full payment. Harold Rorex contested this testimony and stated that he had never been notified of the disapproval.

Traynor served a notice of levy on the taxpayers' bank on October 21, 1981. This notice contained confidential return information about the taxpayers, including their names and the amount of their unpaid federal taxes for 1979 and 1980. In addition, the notice contained the statement that the taxpayers had "neglected or refused to pay" taxes and statutory additions totaling $520.05. The taxpayers testified that as a result of this notice, they had to "beg" the bank for a loan to pay the remaining balance on their taxes, and that this experience caused them embarrassment, took their pride away, and made them feel like deadbeats.

At trial, the district court determined as a matter of law that the agreement of August 7, 1981 remained in effect notwithstanding Schaefer's disapproval. In addition, because the taxpayers had made all payments under the second agreement when they became due, the court determined that the Internal Revenue Code did not authorize a levy on the taxpayers' bank account. The court concluded that because the levy was not authorized, disclosure of the taxpayers' return information violated 26 U.S.C. § 6103 (1976). The court denied Traynor's motion for a directed verdict on the basis of good faith immunity and submitted the remaining issues to the jury, which returned a verdict awarding $15,000 in actual damages and $7,500 in punitive damages to each taxpayer, for a total award of $45,000 ($22,500 for each taxpayer). After entry of judgment, the court denied Traynor's motion for judgment n.o.v. or a new trial. Traynor then brought this appeal.

## II. DISCUSSION.

### A. Violation of 26 U.S.C. §§ 6103 and 7217.

26 U.S.C. § 7217 (1976) provides that: "Whenever any person knowingly, or by reason of negligence, discloses a return or return information * * * with respect to a taxpayer in violation of the provisions of section 6103, such taxpayer may bring a civil action for damages * * *." Traynor first argues that the district court erred in instructing the jury that the disclosure in this case violated section 6103.

Section 6103(k)(6) provides as follows:

An internal revenue officer or employee may, in connection with his official duties relating to any * * * collection activity * * * disclose return information to the extent that such disclosure is necessary * * * with respect to the enforcement of any * * * provision of this title. Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

The Secretary of the Treasury has promulgated regulations prescribing conditions under which return information may be disclosed. Treas.Reg. § 301.6103(k)(6)–1(a) authorizes disclosure "where necessary in order to properly accomplish" certain activities, including application of Code provisions relating to a levy on the taxpayer's assets to satisfy an income tax liability. *See* Treas.Reg. § 301.6103(k)(6)–1(b)(6).

The district court concluded that under this language, disclosure of return information, such as that contained in the notice of levy in this case, could be made only when a levy was properly authorized. It determined that the levy in this case was not proper because the taxpayers were meeting their obligations under a valid installment agreement.[1] Traynor argues that the court's interpretation is erroneous: he contends that disclosure is authorized as long as the information disclosed is necessary to accomplish a levy, regardless of whether the levy is lawful under the provisions of the Code.

Traynor relies on the case of *Timmerman v. Swenson*, 44 A.F.T.R.2d 79–5727 (D.Minn.1979) to support his interpretation. *Timmerman* concerned a taxpayer who had failed to pay an admitted tax deficiency despite repeated notices. Through a clerical error, the IRS served a notice of levy on a bank where the taxpayer did not have an account. The magistrate held that the notice of levy was lawful under 26 U.S.C. § 6331 (permitting levy upon the property of a taxpayer who neglects or refuses to pay any tax) and, consequently, that the disclosure did not violate section 6103.

*Timmerman* is clearly distinguishable from the present case because here the taxpayers have not neglected or refused to pay any tax. On the contrary, the district judge found that they had met all of their obligations under a valid installment agreement. Moreover, *Timmerman* is inconsistent with the statutory scheme embodied in section 7217. That section establishes two prerequisites for unauthorized disclosure liability: the disclosure must be made "knowingly or by reason of negligence," and it must be "in violation of section 6103." Under Traynor's interpretation, disclosure would not violate section 6103 so long as no more information was disclosed than was necessary to effectuate a levy, even if the levy was not authorized by the Internal Revenue Code. Thus, Traynor's interpretation would open a significant loophole in section 7217 in that IRS employees could disclose return information about any taxpayer simply by making the disclosure in the form of a notice of levy. The employees would never be subject to liability under section 7217 because their conduct would never satisfy the first prerequisite to liability.

■ The Government attorneys who represented Traynor have offered no strong reason for restricting a broad application of the general rule stated in section 7217(a), imposing liability when a disclosure is made "in violation of the provisions of section 6103 * * *." Although the question is a close one, we conclude that a disclosure in pursuance of an unlawful levy violates the confidentiality requirements of section 6103(a)[2] and is not authorized under section 6103(k)(6).

### B. Good Faith Immunity.

At the close of the evidence, Traynor moved for a directed verdict on the basis of

---

**1.** Traynor does not here contest the district court's determinations that the installment agreement remained in effect despite the disapproval by Traynor's supervisor, and that the taxpayers had satisfied all their obligations under that agreement.

**2.** § 6103. Confidentiality and disclosure of returns and return information.
  (a) General rule
    Returns and return information shall be confidential, and except as authorized by this title—

  (1) no officer or employee of the United States
        * * * *
    shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section.

good faith immunity. The court denied his motion and submitted the issue of Traynor's good faith to the jury. Traynor contends that this was error.

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that Government officials performing discretionary functions are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Traynor argues that he was entitled to a directed verdict because his conduct did not violate any clearly established rights. In reviewing the denial of a motion for a directed verdict, we view the evidence in the light most favorable to the party moved against, resolving evidentiary conflicts in favor of the nonmovant, assuming as true all facts in his favor which the evidence tends to prove, and giving him the benefit of all reasonable inferences. *Rogers v. Allis-Chalmers Credit Corp.,* 679 F.2d 138, 140 (8th Cir.1982). Under these principles, we must regard the evidence in this case as proving that Traynor served a notice of levy on the taxpayers' bank without ever notifying them that their second installment agreement had been disapproved, even though the agreement states on its face that the taxpayers would receive notice of disapproval. In addition, Traynor knew that the taxpayers had not neglected or refused to pay any installment under this second agreement when due. So viewing the evidence, we cannot say that a reasonable person would not have known that he was violating the taxpayers' rights under section 6103. Accordingly, we affirm the district court's decision to deny Traynor's motion for a directed verdict.

## C. Damages.

The jury awarded the taxpayers "actual damages" of $15,000 each ($30,000 total) for their emotional suffering, and punitive damages of $7,500 each ($15,000 total). Traynor contends that both awards are contrary to the statute. He argues that

the statutory language "actual damages" is only intended to cover pecuniary losses, and that the taxpayers failed to satisfy the statutory prerequisite for the recovery of punitive damages.

Subsection (c) of section 7217 governs the amount of damages awardable in a wrongful disclosure suit. That subsection provides:

In any suit brought under the provisions of subsection (a), upon a finding. of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—

(1) actual damages sustained by the plaintiff as a result of the unauthorized disclosure of the return or return information and, in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, but in no case shall a plaintiff entitled to recovery receive less than the sum of $1,000 with respect to each instance of such unauthorized disclosure * * *.

26 U.S.C. § 7217(c) (Supp.1981).

It is clear that if the taxpayers had suffered some out-of-pocket costs as a result of the disclosure in this case, such losses would be included in their "actual damages" under section 7217. Traynor argues that the statutory language permits recovery *only* for such out-of-pocket losses: nonquantifiable losses such as generalized mental injuries and loss of reputation are not covered. *See Fitzgerald v. Internal Revenue Service,* 665 F.2d 327, 331 (11th Cir.1982). It may well be that Traynor's interpretation is correct, but we need not decide that issue in this appeal because the taxpayers did not present any evidence of compensible nonpecuniary losses in the trial court. There is no evidence of harm to their reputation or credit rating—the bank granted their request for a loan and there is no indication in the record that the disclosure affected their general reputation in the community. The only evidence of injury resulting from the disclosure in this case was the taxpayers' testimony that they suffered personal embarrassment. We do not think that hurt feelings alone constitute

actual damages compensible under the statute. Accordingly, the jury's award of $30,000 in actual damages must be vacated. The taxpayers are each entitled to the statutory minimum award of $1,000.

■ Traynor also argues that the award of punitive damages is contrary to the statute. The statute provides that punitive damages are available "in the case of a willful disclosure or a disclosure which is the result of gross negligence." 26 U.S.C. § 7217(c)(1). We have carefully reviewed the record and we do not find any evidence to support the conclusion that the disclosure satisfied either of these requirements. There is no evidence whatsoever that Traynor acted in willful violation of the law. Furthermore, although the evidence could support a conclusion that Traynor acted negligently in serving the notice of levy, it did not establish *gross* negligence inasmuch as the record establishes that Traynor acted pursuant to the explicit instructions of his supervisor, Charles Schaefer. Accordingly, the award of punitive damages must be dismissed in its entirety.

### III. CONCLUSION.

The judgment is affirmed as to liability, but remanded for reduction of actual damages to $2,000 ($1,000 for each taxpayer) and dismissal of punitive damages. We remand for entry of a modified judgment in this sum together with costs and disbursements as previously awarded in the district court. No costs are awarded on this appeal.