United States Court of Appeals,

Fifth Circuit.

No. 94-40713.

Rhonda K. WILKERSON, d/b/a Forstar Trailers, Plaintiff-Appellee, Cross-Appellant,

v.

UNITED STATES of America, Defendant-Appellant, Cross-Appellee.

Oct. 23, 1995.

Appeals from the United States District Court for the Eastern District of Texas.

Before JOLLY, DAVIS and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The government appeals the district court's award of damages for wrongful levy and wrongful disclosure flowing from tax collection activities aimed at the assets of Plaintiff Rhonda K. Wilkerson. The government also appeals the district court's award of attorney's fees and costs. Wilkerson cross-appeals asserting that the district court improperly denied her Fifth Amendment claims. We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

I

This suit grows out of the Internal Revenue Service's efforts to collect Robert D. Forsyth's delinquent income taxes. Based on information received from various sources, the IRS began to investigate Forsyth's relationship with Rhonda Wilkerson. Wilkerson had just started Forstar Trailers ("Forstar"), a trailer manufacturing business of the same type that Forsyth had been

1

involved in prior to his relationship with Wilkerson. The IRS suspected that Wilkerson might be sheltering Forsyth's assets and income in her name. After further investigation, the IRS found what it believed to be credible evidence that Wilkerson and Forsyth were common-law married. Besides sharing a residence, Wilkerson and Forsyth had represented to family members that they were married, and Wilkerson had endorsed several checks made out to "Rhonda Forsyth" by signing that name. Neighbors and acquaintances confirmed that the two were married, and Wilkerson and Forsyth were expecting a child. Based on this evidence, the IRS issued one Notice of Levy on Wilkerson's bank account, and thirty-seven Notices of Levy to persons believed to be customers and suppliers of Wilkerson's trailer business.[1] Although both Forsyth and Wilkerson continued to deny that they were married, IRS supervisors felt that they had sufficient evidence to pursue a portion of Wilkerson's assets.

After subsequent communication with the IRS, Wilkerson's bank complied with the Notice of Levy and forwarded $2,469.39 to the IRS which the IRS applied to Forsyth's tax debt. The IRS collected no other funds from Wilkerson. As a result of the Notices, however,

---

[1]The Notices of Levy identified Robert D. Forsyth as the delinquent taxpayer and asked for payment of $22,033.79. The Notices of Levy also stated:

> By virtue of the taxes assessed against Robert D. Forsyth, SSN XXX-XX-2387, this levy covers and attaches to one-half of any funds due and owing to Rhonda McClain Wilkerson, dba Forstar Trailers, SSN XXX-XX-5712, EIN 75-2397927, such funds being the community property of Robert Forsyth and Rhonda McClain Wilkerson.

2

Wilkerson's business began to falter. Wilkerson's customers and suppliers were reluctant to continue dealing with Forstar. After Forstar went out of business, Wilkerson filed administrative claims with the IRS. The IRS denied Wilkerson's claims by letter, and Wilkerson filed suit in the district court.

Wilkerson brought claims against the IRS for wrongful levy under 26 U.S.C. § 7426 and § 7433 (for reckless or intentionally wrongful collection activities); wrongful disclosure of her tax return information under 26 U.S.C. § 7431; violation of the Privacy Act, 5 U.S.C. § 552(a); violations of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680; violations of the Administrative Procedure Act, 5 U.S.C. §§ 701-706; and violation of her Fifth Amendment rights. The district court concluded that Wilkerson and Forsyth were not common-law married and that the IRS was negligent in assuming so. Accordingly, the district court awarded $2,469.39 in damages for the wrongful levies. The district court also concluded, based on the wrongfulness of the levies, that the IRS had wrongfully disclosed Wilkerson's tax return information and awarded her $209,547.19 for the value of Forstar, and $20,000.00 for emotional distress. The district court denied recovery on all other grounds, but awarded Wilkerson attorney's fees and costs under 26 U.S.C. § 7430. Neither party appeals the district court's finding that the levies were wrongful nor the award of $2,469.39 in damages for the levies. The government appeals the district court's award of damages for wrongful disclosure, and the district court's award of attorney's fees and

3

costs.  Wilkerson cross-appeals on her Fifth Amendment claims.

II

We review the district court's findings of fact under the clearly erroneous standard.  *Barrett v. United States*, 51 F.3d 475, 478 (5th Cir.1995) (citing *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir.1983)).  The legal conclusions based upon those facts, however, we review *de novo*.  *Id*.  Wilkerson's claim of wrongful disclosure turns on a proper interpretation of the Internal Revenue Code and as such is a question of law reviewable *de novo*.  *Estate of Moore v. Commissioner,* 53 F.3d 712, 714 (5th Cir.1995).

A claim of wrongful disclosure under § 7431 requires (1) that the IRS disclosed confidential tax return information either knowingly or negligently, and (2) that this disclosure was not authorized by § 6103 of the Internal Revenue Code.  26 U.S.C. §§ 6103(a), 7431(a)(1).[2]  Recovery will be denied however, if the IRS acted on a "good faith but erroneous interpretation" of § 6103.  26 U.S.C. § 7431(b).  There is no dispute that the IRS disclosed

---

[2]Section 7431(a)(1) reads:

> If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7431(a)(1).

4

Wilkerson's confidential tax return information.[3]  The issues before this court are whether § 6103(k)(6) authorized the disclosures, and whether the government made the disclosures based on a good faith interpretation of § 6103.  Because we find that § 6103(k)(6) authorized the disclosure of Wilkerson's tax return information, we decline to reach the defense of good faith.

The district court, interpreting § 6103 of the Internal Revenue Code, concluded that disclosure of Wilkerson's tax return information was unnecessary to collect Forsyth's delinquent taxes, because in actuality Wilkerson owed no taxes and was not in fact liable for Forsyth's tax debt.  As the district court reasoned, because the levies themselves were not authorized by statute, the corresponding disclosures were unnecessary and unauthorized by § 6103(k)(6).  Currently a split exists among the circuits on whether

---

[3]Section 6103 defines "Return Information" to include,

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments ... or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense ...

26 U.S.C. § 6103(b)(2)(A).  The IRS disclosed Wilkerson's social security number, employee identification number, business interests, and amount of alleged tax liability. This information was collected by the IRS "with respect to the determination of the existence, or possible existence, of liability" and thus falls within the statutory definition of return information which is to be kept confidential under § 6103(a).

5

the illegality of the underlying collection activity has an effect on the legality of the disclosures flowing out of such activity.[4] The district court followed the Eighth Circuit which has held that "a disclosure in pursuance of an unlawful levy violates the confidentiality requirements of section 6103(a) and is not authorized under section 6103(k)(6)." *Rorex v. Traynor,* 771 F.2d 383, 386 (8th Cir.1985); *see Husby v. United States,* 672 F.Supp. 442, 445 (N.D.Cal.1987) (following *Rorex* ). The *Rorex* court determined that allowing the IRS to avoid liability for its wrongful disclosures by simply including them in a notice of levy would substantially defeat the confidentiality requirement of § 6103. *Rorex,* 771 F.2d at 386. Because we feel that this interpretation misreads the provisions in question, we decline to follow *Rorex*.

The plain language of the Internal Revenue Code supports the government's contention that the validity of the underlying collection activity is irrelevant in determining whether a disclosure is wrongful. Section 6103 sets forth the general rule

---

[4]*Compare Rorex v. Traynor,* 771 F.2d 383 (8th Cir.1985) (holding that disclosures contained in unlawful levy violate § 6103(k)(6)) *with Venen v. United States,* 38 F.3d 100 (3d Cir.1994) (declining to consider the validity of the underlying levy in determining whether disclosures violated § 6103(k)(6)); *Farr v. United States,* 990 F.2d 451 (9th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 634, 126 L.Ed.2d 592 (1993) (holding that where disclosures were necessary to the collection procedure, fact that collection procedures may have been defective does not make the disclosures wrongful); *Huff v. United States,* 10 F.3d 1440 (9th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994) (holding that possible procedural lapses in collection process will not render disclosures necessary to collection wrongful).

that the government may only disclose tax return information in certain narrow instances.[5]  Section 6103(k)(6) provides for disclosure "in connection with collection activity ... or with respect to the enforcement of any other provision of this title." 26 U.S.C. § 6103(k)(6).[6]  Pursuant to this provision, the Secretary of the Treasury promulgated regulations permitting disclosures in applying "the provisions of the Code relating to establishment of liens against [a taxpayer's] assets, or levy on, or seizure, or sale of, the assets to satisfy any [outstanding tax] liability." 26 C.F.R. § 301.6103(k)(6)-1(b)(6).  At no place in the Internal Revenue Code does Congress make the propriety of those disclosures conditional upon the ultimate propriety of the levy.  The plain language of these sections authorizes disclosures to the extent necessary to effectuate a levy.  *Venen v. United States*, 38 F.3d

---

[5]Section 6103(a) provides, "Returns and return information shall be confidential, and except as authorized by this title ... no officer or employee of the United States ... shall disclose any return or return information."  26 U.S.C. § 6103(a).

[6]Section 6103(k)(6) reads:

> An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title.  Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

26 U.S.C. § 6103(k)(6).

7

100, 106 (3d Cir.1994).

The statutory scheme further supports the government's position. Congress enacted separate and distinct provisions concerning collection activities and information handling. When the IRS issues a wrongful levy on a taxpayer's property, § 7426 provides damages which are distinct from those allowed under § 7431 for wrongful disclosures. Section 7426 allows recovery of what the IRS actually received or "seized" from its wrongful levies. 26 U.S.C. § 7426(b)(2).[7] *See Three "M" Investments, Inc. v. United States,* 781 F.2d 352, 353 (10th Cir.1986) (noting that section 7426(b)(2) was not meant to be compensatory); *Hammond Co. v. United States,* 568 F.Supp. 309, 313 (S.D.Cal.1983) (same). Section 7431 covering wrongful disclosures, however, allows recovery of compensatory damages. 26 U.S.C. § 7431(c)(1)(B)(I). If Congress had intended to allow recovery of compensatory damages in the

---

[7]In relevant part § 7426(b)(2) reads:

> If the court determines that such property has been wrongfully levied upon, the court may—
>
> (A) order the return of specific property if the United States is in possession of such property;
>
> (B) grant a judgment for the amount of money levied upon; or
>
> (C) if such property was sold, grant a judgment for an amount not exceeding the greater of—
>
> (i) the amount received by the United States from the sale of such property, or
>
> (ii) the fair market value of such property immediately before the levy.

26 U.S.C. § 7426(b)(2).

8

ordinary wrongful levy case, they would have so stated in § 7426. Holding that disclosures necessary to effectuate a levy automatically become wrongful upon a finding that the levy was deficient in some way, would effectively read out of the Internal Revenue Code the distinct damage remedies that Congress provided.[8]

The foregoing analysis indicates that Congress intended collection activities, such as levying, to be distinct from information handling. We see no reason to conflate them. As the Third Circuit noted, "[t]hese two bodies of law must remain distinct." *Venen,* 38 F.3d at 106. Accordingly, we decline to follow *Rorex,* and join the Third and Ninth Circuits in holding that the validity of the underlying collection activity is not relevant in determining whether the disclosures of tax return information were wrongful.[9]

---

[8]Further support for the government's position comes from the fact that § 7433 does allow a victim of unreasonable collection activities to recover "actual, direct economic damages," but only if the IRS's conduct was reckless or intentionally wrongful. If we were to hold that disclosures necessary to effectuate levies become wrongful when the levies are adjudged deficient, then this section would essentially become a nullity. *See Venen,* 38 F.3d at 106 (analyzing the interaction between §§ 7431 and 7433).

[9]Liability under § 7431(a)(1) requires that the IRS made the disclosures "knowingly, or by reason of negligence." We note that the district court found the disclosures negligent due to the IRS agent's failure to gather sufficient evidence and consult an attorney before concluding that Wilkerson and Forsyth had a common-law marriage. For the reasons stated in this opinion, we believe that the district court misread the requirements of § 7431. The district court's analysis ties the scienter requirement of § 7431 directly to the propriety of the underlying levies. The plain language of the statute states that the disclosures must be done either negligently or knowingly "in violation of any provision of section 6103." 26 U.S.C. § 7431(a)(1). This is an independent inquiry. A finding that the

Accordingly, we hold that § 6103(k)(6) authorized the IRS's disclosure of Wilkerson's tax return information, and thus the disclosures were not wrongful.[10] As was the case in *Venen*, Wilkerson's claim is based on improper levying procedures, not on improper information handling. The IRS issued levies to collect Forsyth's delinquent taxes. Pursuant to § 6103(k)(6) and 26 C.F.R. § 301.6103(k)(6)-1(b)(6), the IRS included in the Notices of Levy Wilkerson's social security number, business interests, employee identification number, and alleged tax liability—the information necessary to provide effective notice of the tax liens to persons dealing with Wilkerson. Absent the disclosures, the Notices of Levy would have been wholly ineffective in collecting money for which the IRS believed Wilkerson was responsible. The IRS thus acted reasonably in determining that disclosure of Wilkerson's tax return information was necessary to enforce the Internal Revenue Code and obtain the delinquent taxes.[11]

---

underlying collection activity was done negligently does not necessarily mean that the disclosures were also done negligently. *Cf. Huckaby v. United States Department of Treasury,* 794 F.2d 1041, 1050 (5th Cir.1986), (holding IRS liable under § 7431 when the agent should have known that the disclosures were not authorized by the statute).

[10]This opinion should not be construed to hold that every claim of wrongful levy will fail to give rise to a claim of wrongful disclosure. We hold only that proof of wrongful levy, absent more, is legally insufficient to support a claim for wrongful disclosure.

[11]We distinguish Wilkerson's case from *Barrett v. United States,* 51 F.3d 475, 478-79 (5th Cir.1995). In *Barrett,* we held that where disclosure of tax liability was contained in letters sent solely to obtain information, disclosure was unnecessary if the information sought was "otherwise reasonably available." Unlike the information sought in *Barrett,* there is no effective

The district court denied Wilkerson's Fifth Amendment claims on the grounds that she had failed to show that the IRS acted with sufficient malice or intent to harass to afford her recovery under either the due process or takings clause of the Fifth Amendment. Wilkerson argues that the court erred in requiring malice or intent to harass before allowing recovery under the Fifth Amendment. *See Rutherford v. United States*, 702 F.2d 580, 583-84 (5th Cir.1983) (holding that a party may be entitled to *Bivens* recovery under Fifth Amendment for malicious acts of the IRS which go so far as to infringe taxpayer's Fifth Amendment liberty interest). We decline to determine the scope of *Rutherford* because we find that the district court lacked jurisdiction to decide Wilkerson's Fifth Amendment claims.

The United States is immune from suit except as it waives its sovereign immunity. *FDIC v. Meyer*, --- U.S. ----, ----, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); *United States v. Sherwood*, 312 U.S. 584, 586-87, 61 S.Ct. 767, 769-70, 85 L.Ed. 1058 (1941). Congress sets forth the terms of those waivers and courts may not exercise subject matter jurisdiction over a claim against the federal government except as Congress allows. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Drake v. Panama Canal Comm'n*, 907 F.2d 532, 534 (5th Cir.1990); *Ware v. United States*, 626 F.2d 1278, 1286 (5th

---

way to design Notices of Levy without disclosing tax return information.

11

Cir.1980).  Waivers of sovereign immunity must be strictly construed.  *Sherwood,* 312 U.S. at 590, 61 S.Ct. at 771.

The Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a), vests concurrent jurisdiction in the United States Court of Federal Claims ("Court of Claims") and the federal district courts over any "claim against the United States, not exceeding $10,000 in amount founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States."  28 U.S.C. § 1346(a)(2).  For claims that exceed $10,000, the Tucker Act grants exclusive jurisdiction to the Court of Claims.  28 U.S.C. § 1491(a);  *Amoco Production Co. v. Hodel,* 815 F.2d 352, 358 (5th Cir.1987), *cert. denied,* 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988).  We have consistently refused to allow district courts to adjudicate issues which belong solely to the Court of Claims, even though some other statute conferring jurisdiction would otherwise allow the district court to hear the case.  *Amoco Production,* 815 F.2d at 358 (citing *Graham v. Henegar,* 640 F.2d 732, 734-35 & n. 6 (5th Cir.1981)).  As we have stated, "The law of this circuit is clear: the Court of Claims has exclusive jurisdiction of a Tucker Act claim in excess of $10,000."  *Ware,* 626 F.2d at 1287.

Wilkerson claims that either the government engaged in a taking of her property without just compensation, or deprived her of her property and liberty interests without due process of law. Wilkerson seeks $1,146,006.00 as recompense for these alleged wrongs.  Because Wilkerson's claims are against the United States,

12

based on the Constitution, and for money damages in excess of $10,000, the Tucker act does not allow the district court to hear this case.[12]  Indeed, we can find no statute allowing Wilkerson to bring her claims in district court.[13]  Pursuant to the Tucker Act, Wilkerson should have brought her Fifth Amendment claims in the Court of Claims.  *Amoco Production,* 815 F.3d at 368;  *Ware,* 626 F.2d at 1287.

---

[12]Wilkerson also argues that 28 U.S.C. § 1346(a)(1) provides the district court with jurisdiction over her Fifth Amendment claims.  Section 1346(a)(1), however, only allows the district court to hear suits to recover "any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."  28 U.S.C. § 1346(a)(1).  This language applies only to suits to recover money wrongfully paid to the IRS.  Here Wilkerson seeks damages under the Fifth Amendment for the constructive taking of her business, a claim outside the scope of § 1346(a)(1).  *See United States v. Williams,* --- U.S. ----, ----, 115 S.Ct. 1611, 1618, 131 L.Ed.2d 608 (1995) (holding that § 1346(a)(1) allows a person from whom taxes were wrongfully collected to sue for a refund of those taxes).

[13]Wilkerson argues in the alternative that 28 U.S.C. § 1367(a) allows the court to hear her Fifth Amendment claims on the basis of supplemental jurisdiction—as part of the same case or controversy as her tax claims.  Section 1367(a), however, deals only with the federal courts' power to exercise subject matter jurisdiction over certain claims and does not operate as a waiver of the United States sovereign immunity.  Sovereign immunity and subject matter jurisdiction are distinct doctrines.  Section 1367(a) essentially codified the common law doctrine of pendant jurisdiction; *Baker v. Farmers Elec. Co-Op, Inc.,* 34 F.3d 274 (5th Cir.1994);  which allows litigants in federal court to join state claims with their federal claims where the claims are so related that they "form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  As we have previously held, the doctrine of pendant jurisdiction cannot be used to waive the United States' sovereign immunity unless Congress specifically allows it.  *Ware,* 626 F.2d at 1286 (quoting *Sanborn v. United States,* 453 F.Supp. 651, 655 & n. 5 (E.D.Cal.1977)).  Here there is no waiver except to have the claims heard in the Court of Claims.

Section 7430 authorizes the award of attorney's fees and costs to prevailing parties in tax litigation. Section 7430(c)(4)(A) defines "prevailing party" as any party who (1) establishes that the position of the United States was not "substantially justified," and (2) "substantially prevails" as to the amount in controversy or as to the "most significant issue or set of issues presented." 28 U.S.C. § 7430(c)(4)(A); *Heasley v. Commissioner,* 967 F.2d 116, 122 (5th Cir.1992). The district court found that the IRS's position in this litigation was not substantially justified and that Wilkerson had prevailed on the most significant issues in the case—wrongful levy and wrongful disclosure. We review the district court's grant of attorney's fees under § 7430 for abuse of discretion. *Heasley,* 967 F.2d at 120, 123. We can only reverse "if we have a definite and firm conviction that an error of judgment was committed." *Lennox v. Commissioner,* 998 F.2d 244, 248 (5th Cir.1993).

Substantially justified means "justified to a degree that could satisfy a reasonable person." *Id.; Nalle v. Commissioner,* 55 F.3d 189, 191 (5th Cir.1995). To meet this standard, the government's position must have a reasonable basis both in law and fact. *Bouterie v. Commissioner,* 36 F.3d 1361, 1367 (5th Cir.1994); *Hanson v. Commissioner,* 975 F.2d 1150, 1153 (5th Cir.1992). In essence, the inquiry focuses on the reasonableness of the government's position prior to the onset of litigation. *Nalle,* 55 F.3d at 191-92.

The district court concluded that the IRS had based its assumption of common-law marriage on unreliable information. Further, the district court found that the IRS agents lacked any knowledge concerning Texas marriage law, and acted without ever consulting an attorney on the subject. At the time the IRS made the levies, the only definite information the agents had consisted of uncorroborated testimony from witnesses who the IRS knew were inimical to Forsyth or Wilkerson, or who stood to gain from their being married, such as Forsyth's ex-wife who shared in Forsyth's tax liability. In addition, the investigating agent did not consult an attorney until after issuing the Notices of Levy, and admitted that he had no knowledge concerning Texas marriage law. After careful review of the record, we cannot say that we have a definite and firm conviction that the district court erred in its finding. Accordingly, we affirm the district court's conclusion that the IRS's position on the levies was not substantially justified.[14] *See Portillo v. Commissioner*, 988 F.2d 27, 28-29 (5th Cir.1993) (holding IRS's position not substantially justified where they relied solely on unsupported information); *Nalle,* 55 F.3d at 192 & n. 5 (citing case law which holds that the IRS is not substantially justified where proper application of state law would have indicated the incorrectness of the government's position).

The second requirement under § 7430(c)(4)(A) involves whether

---

[14]For the reasons stated in Part II of this opinion, we find that the IRS's position on the disclosure of Wilkerson's tax information was substantially justified, and therefore Wilkerson is not entitled to attorney's fees for that portion of the case.

15

Wilkerson has substantially prevailed as to the amount in controversy or as to the "most significant issue or set of issues presented." 28 U.S.C. § 7430(c)(4)(A). To determine if a party has substantially prevailed, "we look to the final outcome of the case, whether by judgment or settlement." *Heasley*, 967 F.2d at 122. A victory on the primary issue will suffice, and neither the amount of damages received nor number of claims won is determinative. *Id.; see Huckaby v. United States Department of Treasury*, 804 F.2d 297, 299-300 (5th Cir.1986) (holding party a "prevailing party" despite victory on only one claim out of several).

Wilkerson has prevailed on her claim of wrongful levy, but failed on all her other claims, including wrongful disclosure. Although she sought a greater amount of damages for the disclosures, that fact alone does not make the disclosure issue most significant. *See Huckaby*, 804 F.2d at 299-300 (holding that a party was a "prevailing party" despite award of only $1,000 out of possible $28,000 in damages). In order to determine which issue is most significant, we must determine which issue is primary or most nearly central to the case. *See id*. at 300 (holding an issue most significant because it was "the primary issue"). Looking at the gravamen of Wilkerson's complaint, the primary issue was whether the levies on Wilkerson's property were wrongful. The bulk of Wilkerson's claims were in some way derived from the wrongfulness of the levies. For example, Wilkerson's argues that she is entitled to recover under the Fifth Amendment because the

16

levies caused her to lose her business without due process or just compensation. Likewise, Wilkerson based her claim of wrongful disclosure on a theory that the wrongfulness of the levies made the disclosures wrongful. Although we reject this position, Wilkerson's complaint indicates the centrality of the levy issue. Accordingly, we hold that the wrongful levy issue was the most nearly central to her case. Having prevailed on the wrongful levy issue, Wilkerson has prevailed as to the most significant issue in the case.

Wilkerson is thus entitled to an award of attorney's fees and costs as a prevailing party under § 7430 of the Internal Revenue Code. However, since Wilkerson has failed to prevail on any other issue, she is not entitled to attorney's fees and costs attributable to those issues. *See, e.g., Powers v. Commissioner*, 51 F.3d 34, 35 (5th Cir.1995) (apportioning attorney's fees under § 7430 based on number of issues won on appeal); *Heasley*, 967 F.2d at 123-25 (holding that the burden is on the prevailing party to establish number of attorney hours expended, and that such hours were reasonable). Accordingly, we vacate the district court's award of attorney's fees and costs and remand for a determination of the amount of fees and costs to which she is entitled.

V

For the foregoing reasons we AFFIRM the district court's finding of wrongful levy. We REVERSE the district court's ruling on wrongful disclosure and deny Wilkerson recovery based upon that claim. On Wilkerson's Fifth Amendment claims, we VACATE the

17

district court's denial of recovery, and remand for a determination of whether "in the interests of justice" they should be transferred to the Court of Claims under 28 U.S.C. § 1406(a).  We VACATE the district court's award of attorney's fees and costs and remand for a determination of the amount of fees and costs to which she is entitled.